May it please the Court, Richard Deplanche, I'm here on behalf of Office Depot, Incorporated and Sedgwick Claims and Management, Incorporated. We're before the Court on the granting of a motion for summary judgment awarding the plaintiff, Apelli Alvin Schiro, short-term disability benefits for an additional period of time. It's important to note that Apelli was an employee of Office Depot, was covered under a short-term disability plan that is governed by the application of the Employee Retirement Security Act, ERISA, and while at first glance this might seem to be a very trivial case, there are some very important legal constructs that are at play and used by the District Court. Well, why don't you, you know, move on from the fact that apparently there was no conflict of interest between the Sedgwick and Office Depot, so we're under the abuse of discretion standard, and the District Court opinion apparently just reviewed the facts de novo. That said, the facts, I don't quite understand . . . I don't understand what Mr. Schiro's ultimate diagnosis was, but I mean, it does appear that she reviewed the facts de novo, which normally we don't do. Your Honor, exactly. That's one of the first reasons why we'd ask you to overturn the District Court's decision, and I would note that your review of the District Court is de novo because it was a granting of a summary judgment, so you can de novo review this record and overturn the District Court's opinion and reinstate, which is what we're asking you to do, reinstate the Planned Administrator Sedgwick's opinion. The District Court impermissibly applied the standard that was applicable, because what the District Court did is not give any deference to the Planned Administrator's determination in this particular case, and I think what we should probably do is maybe initially go through the issue as it relates to the evidence that was before the Planned Administrator and that timeline, and that's significant, because this is not a case where the Planned Administrator Sedgwick, and I'll refer to them as the Planned Administrator herein, Sedgwick gave a significant amount of consideration to the medical evidence that was presented. This isn't a case where Sedgwick simply, or the Planned Administrator, simply came in and said, we don't like what the doctor said, we're going to deny it. Well, what was the complication with the second surgery? He was having some neurological complications, as we understand it, he was having some neurological complications that involved some numbness and tingling after the surgery, and that's why Dr. Tom... How do you do abdominal surgery on the small intestine and then you end up with superficial paresthesia? I'm not sure that we understand exactly what... That's what his final diagnosis is? That's what his final diagnosis was, right? Pain, obviously. Pain and the numbness and some limitations as it related to those numbness and neurological conditions. We, as counsel for the Planned Administrator, have not second-guessed their decision, I can only tell you what their decisions were based on. And what they had before them was the operative report of Dr. Thomas, where they talked about what his condition was on May 21st. Dr. Thomas, in his report that was submitted, said that he estimated that he would be out of work until June 12th. The disability case manager reviews those records in May and again reviews those records in June after they're received from Dr. Thomas. And looking at objective medical guidance makes a determination that, based on the operative report, despite the fact that he's being referred to a neurologist, based on the operative report and his job description, and this is an important factor and a nuance that has been lost by the district court, the Planned Administrator has available to them his job description. This is not a heavy labor job, there is some manual labor involved in this job, but the Planned Administrator has his job description available. They take the medical records in relation to the job description and in relation to objective guidance from medical experts and say he's not disabled for short-term disability benefits after May 30th. Did he have a partial colostomy or something after the April surgery? I'm not aware that he had a partial colostomy after that, Your Honor. I'm unsure and I cannot answer that. And again, that's the type of analysis of the records that we really shouldn't be doing and that the district court shouldn't be doing. Well, but there ought to be, the records ought to be in the files somewhere. And all the medical evidence, all the evidence that was available to the Planned Administrator was submitted to the court. We filed the complete administrative record in September of 2013, and that record contains all of the medical records that were available to the Planned Administrator at the time of their review. And that's in the record. And there are certain specific references to the medical records in our brief that I can refer you to. For example, Dr. Thomas's report is the record on appeal starting at page 1174 to 1177. And it's that report that the judge kind of makes a big significant, she, the district judge made a quantitative analysis of that report and decided that we shouldn't have rejected that report or we should have agreed wholeheartedly with that report because the And we should have simply gone with that doctor's opinion. And that's simply not what the case is. The Planned Administrator also had the report from Dr. Truax, who was the referring neurologist, from June 11th of 2012, after his examination. And if you look, that's the record on appeal at page 1194. What Dr. Truax says in that report is, Mr. Sciro said he cannot work. I said that was fine. He can stay off of work for the time being. Again, he says similar thing in July. But what is not available to Dr. Truax, that is available to the Planned Administrator, is the job description. Is the job description. So the Planned Administrator doing their job, as this court has set out, as most recently in the Meditrust decision, which I think really controls here, but as the Planned Administrator said at the time, we have to take all the factors into consideration. And so, at that time, they made a decision to not extend, they granted him short-term disability benefits until May 30th, but not beyond that date. As I understand it, the most, please correct me if I'm wrong, the most rigorous part of the job description was the ability to lift up to 50 pounds, that was it, wasn't it? That's the most rigorous, the most rigorous part of his job description actually says he has to be able to lift from 0 to 50 pounds, 50 pounds being the most, without reasonable accommodation. So, he is the office manager of the Office Depot, the Planned Administrator made a determination that with reasonable accommodation, he should not be short-term, he should not be disabled after May 30th, based on the condition in the medical record. And again, the standard before the district court should be, was there substantial evidence to support the Planned Administrator's decision? She simply did not apply that standard, and that was legal error. You know, the court committed legal error, and instead of trying to find and analyze the evidence, whether or not the Planned Administrator had substantial evidence, the district court made a de novo review of the record and decided, where do I find the evidence of disability? And that's legal error under many cases cited that have been decided by the district court. Where would we be if he had taken FMLA leave? He did take FMLA leave. He was, that's a whole separate issue, which we have not briefed. He was granted and took FMLA leave. In fact, some of the medical evidence that was reviewed on remand was part of the FMLA record, which Sedgwick, if you read their remand report to the judge, Sedgwick actually explained that some of the medical evidence was in his FMLA file and not in his disability file, but they went ahead and reviewed that and confirmed that the decision that they made, based on all of the evidence up to October 26, did not support a finding of further disability. And that's a very important distinction because the district court referred the Planned Administrator back to evidence that didn't exist on October 26, which is also improper and legal error. And so that's the second legal error that was committed by the district court in trying to get the Planned Administrator or impose an obligation on the Planned Administrator to submit evidence after they made their final determination on October 26. Their final determination was not made until after they retained an independent medical expert to conduct a review of all the records and make an assessment of his short-term disability. And the Planned Administrator made the decision to affirm that he was not entitled to short-term disability benefits. The district court committed further legal error when she ruled specifically that the Planned Administrator was required and she was giving deference to the treating physicians. That's directly contrary to the precedent of this circuit, of this court. And so the district court should not have made that rule. I'm referring to the Supreme Court Black and Decker case. Excuse me, Your Honor? I'm referring to the Supreme Court's Black and Decker case. Yes, Your Honor. It's not just Fifth Circuit. Right. It's not just Fifth Circuit as well. But I mean, just as recently as months ago, this court is reminding the district courts that that's not the rule, and unfortunately that's the rule that the judge relied upon in large part to reverse the decision of the Planned Administrator. And you know, her decision should have been limited in evidentiary scope, and it wasn't. It wasn't twice. It wasn't the first time on remand, nor was it the second time when she made the decision on the motion for summary judgment. Counsel, when we have a few times reversed an administrator, sometimes we have dug into the evidence. It's not just a 30,000-foot view. We do look into it. And in the Lane v. Unum Life case from a few years ago, 2002, quite a while ago, we decided that the administrator ignored portions of the physician's statements, ignored statements from his own internal review, and unreasonably took into account a mental health question that really wasn't involved in the disability being sought. Is there anything like this? I know you're going to say no. But, excuse me, part of what we look to is, did the administrator actually look at all the evidence before him, didn't say that there's no evidence here of X and, in fact, there was evidence there of X, didn't ignore the fact that it was serious abdominal surgery as opposed to a minor incision? What do we have along that line that we may be hearing from opposing counsel? We actually have a series of things. One of the things that's important is that we have the plan administrator is not ignoring any of the medical evidence. They are actually doing a qualitative analysis of all the evidence, each step of the process, and that's documented in the claim file. We have them actually reading and trying to digest what the operative report and the findings from Dr. Thomas say. They're reading the reports from the treating physicians and doing an analysis of that. They then, on appeal, hire someone to conduct an independent review of those records. But as you will see from the administrative record, each step along the way, they are asking for additional information. The judge actually had a problem with the fact that the plan administrator had a message from the doctor. But I think that weighs in favor of the plan administrator here, because what that shows is a proactive plan administrator that was actively trying to get as much information and clarity as they could. They hire a clinical nurse to review these records and then hire an expert. So where Dr. Brock tried to contact Dr. Truax and whoever the other doctor was and was unable to do so, is that fairly standard procedure? It's a very standard procedure for the plan administrator to be in direct contact with physicians. It is something that happens on a regular basis. And the fact that they got a message through an assistant is something that's simply not that unusual. And the fact that the judge actually considered... Well, from a patient standpoint... Excuse me? It happens all the time from a patient standpoint. It's a regular issue. I mean, if this doctor had really wanted to get his client a disability, he would have written a few paragraphs and explained it. But I didn't see that in the recitation of the evidence. And what he wrote was, I asked the patient if he wants to go back to work. He said no. I said that was fine. We have to take that comment from the physician as part of the totality of the circumstances. And in that circumstance, this plan administrator actually did a rational job. You may find that it's at the low end of the spectrum of reasonableness, but what they did was reasonable. And the district judge had no authority to impose her independent judgment, and that's exactly what happened in this case. And these are the types of situations where the Court of Appeal has to step in and reverse and reinstate the plan administrator's job. I did not address the appeal issue. I believe that the notice of appeal was timely because it was premature. Once the judgment was entered, the notice of appeal was timely. Thank you. All right. Thank you. Mr. Barbera? Good morning, Your Honor. It's Tom Barbera on behalf of Mr. Sciro. Quickly on the appeal issue, we believe it was not timely. It was filed 68 days after the original order. Then on March 16th, we filed a motion to dismiss the appeal because it was not timely. And this court specifically ordered the district judge to issue a judgment, which the judge which the court did, after which they didn't file a notice. Now the exception, there is a one exception, and it's the Alcom case in the Fifth Circuit, and it says the purpose of Rule 4A.2 is to avoid the harsh results it may obtain when a district court has announced its final judgment and zealous counsel, in his haste to file a notice, does so before the district court formally enters the order. Well, they waited 68 days. That's not really zeal. And then particularly when this court said, okay, the judge has to issue a judgment, it still did nothing. More problematic is that on January 29th, the district court issued a judgment ordering Office Depot to pay some $28,000 in attorney's fees. That's a final judgment. Their notice of appeal is the November 19th, 2004 order. That's what their notice of appeal says. And Rule 3C1B, Federal Rules of Procedure, requires the notice to include a designation of the judgment. Technically, I could go collect that judgment. To be perfectly candid, the reason I don't is I don't think the attorney should get paid before the client, but it is a judgment. On the other issue... What's your client's diagnosis? What exactly... I mean, how do you get from internal surgery on the small intestine to some sort of external ongoing nerve pain and so on? Well, Dr. Truax, his July 9th report says the MRI scan showed multilevel degenerative disc disease, and the doctor attributed the burning over his thigh to neuralgia paresthesia. Okay, that's a diagnosis. I will admit that a lot of the notes don't have specific diagnoses. Well, I mean, that doesn't... I don't even understand that physiologically. That's why I was asking, and I was sort of hoping somebody would have an explanation. Well, my point... Well, let me go through this. First of all, Dr. Thomas, who they say they're relying on, said he shouldn't be able to... He should... Well, it's not unreasonable for him not to be able to work till June 12th or June 13th. Well, what did the court... What did the plan administrator do? We're cutting you off on May 31st because that's all our plan left. That's not based on any evidence. Look, the point is, you're going to have to do more than a jury argument here because... I mean, I don't even think your brief seriously defends the fact that the district court cloaked abuse of discretion with a de novo review of her view of the medical record, so I do think she committed that fundamental mistake. So what is there in the record that supports your idea that the plan administrator absolutely didn't review the medical evidence, went contrary to the medical evidence, or something like that? Well, as the district court said, that the administrative record contains four written entries from Dr. Truax dated June 11th, July 9th, July 10th, and August 21st, indicating Skiro could not work. Dr. Fothery stating also that Skiro could not work, dated September 21st, or could not work without restrictions November 8th, 2012. What... I guess what they're trying to say is that the plan administrator makes a decision, and although the ERISA law permits a claimant to bring an action, there's no need to that because the plan administrator has ruled. Well, I don't, you know... I'm sorry of this. I mean, there was a very poignant note in the file there, the man writing to the company and asking for relief. But he's the sick person. His doctors need to tell the plan administrator what's wrong with him and why, and that's what I don't see in the record. Well, one reason, I think, what they do say is he can't work now because we're dealing with the short term. It's a 24-week period. It's kind of like, you know, a worker's copy is temporarily total disability. What does that mean when he's got a broken arm? Well, that doesn't mean the man is disabled, but he's temporarily totally disabled, and in six weeks he'll be fine, okay? And that's kind of what these doctors were getting at with this short-term disability. But what the court did say, they went through pains to say that this is an abuse of discretion, okay? And what the court said is there's an abuse of discretion, abuse of discretion review is applied to an administrator's factual determination, is limited to determining whether there is substantial evidence in the record to support their decision, and a plan administrator can abuse his or her discretion if he or she fails to obtain necessary information. That's the Sally DuPont case. In this case, what they did was they tried to rely on their doctor, Brock, I believe it is in October, to justify their decision for having cut off Mr. Skirro in May. Well, if this case had been for two weeks of disability, it seems to me it might be a completely different case, but you're asking for the 24 weeks of short-term disability, are you not? Right, because, again, what they say is, oh, we're limited to the administrative record then, okay? Sorry, but you are, yes. Yeah, I understand that. So I can't get somebody to say 24 weeks later this is where he is, but his doctors repeatedly say the man can't work for now. He can't work for now. Well, you tell me, why can't the poor guy work? Well. You know, we all have, at a certain age, we all have back aches and we all have little episodes of neuralgia and so on, so why can't he lift 50 pounds occasionally? That's not in the record, is it? There is no diagnosis on the record, I would say. Yes, that's. Okay, other than the diagnosis for the surgeries, okay? But, again, we're dealing with a short-term disability where the doctors, and I don't think doctors just go and say you can't work. I mean, they're doctors. We rely on doctors. The circumstances of this decision also are very interesting. The court remanded the matter and specifically asked the plant administrator to consider the notes of Dr. Truax and fathering, Mr. Skiro's doctors. I thought maybe I had something on me that was recording. But in any event, they did nothing. I filed a second summary judgment, and then all of a sudden the report shows up in the court's fax machine. It wasn't even provided to Mr. Skiro. So the judge said, well, this is moot now. He got a report, and I said, well, now it's arbitrary and capricious. And what did they do? They were remanded by the court to consider the decisions of those two doctors, and they did nothing. When they got caught with the pants down, they said, oh, we can consider it. We haven't changed our mind. Was one of those fellows a neurologist or a neurosurgeon? Yeah, one of them. I think Dr. Fothery. Fothery? Yeah, again. Feathery, Fothery. You go in to have your small intestine repaired, and then you end up with discs. All I could think to myself was, well, maybe he was grossly obese. Well, he was not grossly obese. And, you know, to suggest that maybe you had to lift zero to 50, the man had to work all of the equipment. That's what part of his job description was. He had to climb ladders, and he climbed ladders regularly based on his job. That's not, you know, this is not somebody sitting behind a desk ringing up. If you have a hernia surgery, they'll tell you not to, you know, lift for four to six weeks. Well, he got six weeks. Right. And then the doctors say you still can't work right now. And what they did was they said, and listen, like I said, yes, the district court did look at the administrative record. There's nothing improper about that. You have to. Otherwise, the concept that you can bring an action under ERISA against a planned administrator would have no meaning whatsoever. I agree with that, but it is very deferential. It is deferential, but you can't ignore it. And that's what happened. This is sincere. I'm going to not look at your stuff. I'm going to look at mine. Then when they're ordered by the court, look at it. What do they do? Nothing. They did nothing. And then they send a report, and they don't even give it to the claimant. I mean, this case, I know it's not sexy, but it's not your average ERISA case. Those things don't happen very often in cases I see, that there's a remand and then an ignoring of the remand. And I understand it looks like the judge did go through and look at the record, but that's what the judge has to do. And the judge didn't substitute its judgment. The judge said, no, the planned administrator ignored this and did not have substantial evidence. They don't say that Mr. Skiro is not disabled. They just say, we don't have sufficient records to determine that. And the judge said, yes, you do. And I believe in this case, taking into account all of the record, particularly the medical records of the treating physicians, And the judge didn't say, I'm going to give deference to them. The judge just mentioned, those are the treating physicians, and the physician they're relying on never saw him. But that's a true fact. The judge didn't say, because of that, they're overruled. The judge just said, you've got to look at them, and you've got to consider them. And I'll yield the rest of my time, unless you have any other questions. Okay, well, thank you very much. Thank you. Mr. Duplanche? Thank you, Your Honor. Let me address first the appeal issue. The court clearly has jurisdiction over this appeal. The judge issued an order in November that awarded him short-term disability benefits and attorney's fees. As a result of that order, we fully expected counsel to ask that a judgment be entered or the district court to issue a judgment thereafter. That never took place. What took place was that counsel sent us a demand saying, you've got to pay this now. And as a result, we wanted to be clear. We filed a notice of appeal because we were concerned that the order was going to be considered a final appeal judgment. We looked at the rules as to the 150 days for appeal of the judgment, and we decided to file the notice of appeal. Thereafter, the judge filed a final judgment. The premature notice of appeal. A Rule 58 judgment. Yeah, a Rule 58 judgment. The Supreme Court has said, this court has said, you know, the first tier case, I think, is probably right on point, that a premature notice of appeal is considered notice. The only reason why you wouldn't consider jurisdiction is if somehow there was prejudice in this case that they didn't expect us to appeal. Clearly, that occurred in this case, and that notice acts as notice the day that judgment is entered. So I think that issue is a bit of a red herring. I want to go back to what Judge Jones was raising with the issue about the diagnosis. And I think it's important that when you look at the remand review, which I believe that Sedgwick did a really good job on that remand analysis explaining, they went back to Dr. Brock. Because each step of the process, this is not something that we were delaying. And when you look at the administrative record and you look at the notes from Sedgwick, literally days, day after day after day, there's activity on this file leading up to the decision, after he files an appeal, to refer this to Dr. Brock. Dr. Brock himself is looking through the records, trying to understand what his diagnosis is. And Dr. Brock, in that October 10th or 12th report that he issues, says that he has this surgical procedure, that he then has this numbness, and has an EMG and an MRI. The EMG is normal. The EMG is normal. The MRI finds degenerative disc disease. But nothing in those records are indicative that he can't do his job according to the job description. Dr. Brock had available to him that information as to his medical condition, his medical treatment, the tests that were rendered. There is substantial evidence on the sliding scale to support the decision made by the plan administrator. To go beyond and question the quality of the medical evidence is really beyond the scope of the review by the court. And that's what we're urging this court not to do. Moreover, a counsel even referred to it again. He referred to a report from Dr. Fotherly of November 8th, 2012. That's after the final appeal, his last appeal is decided on October 26th. It would be improper for the court to impose on the plan administrator an obligation to review evidence that they couldn't have reviewed when they made their final decision. We are urging this court to reinstate the decision of the plan administrator, reverse the decision, and find that the plan administrator acted within the scope of their authority. Thank you. All right, sir. Thank you very much. This concludes our session for the week. The court will stand in recess.